UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 NOV 21  PM 3: 41

CLERK

BY_____
DEPUTY CLERK

JESSICA GINGRAS and                     )
ANGELA C. GIVEN, on behalf of themselves )
and all others similarly situated,       )
        Plaintiffs                       )
                                         )
        v.                               )        Docket No. 5:17-CV-233
                                         )
VICTORY PARK CAPITAL ADVISORS,           )
LLC, VICTORY PARK MANAGEMENT,            )        **JURY TRIAL DEMANDED**
LLC, GPL SERVICING, LTD., GPL            )
SERVICING AGENT, LLC, GPL                )
SERVICING TRUST, GPL SERVICING           )
TRUST II, HAYNES INVESTMENTS,            )
LLC, and JOHN DOES 1-10,                 )
        Defendants                       )

## CLASS ACTION COMPLAINT

### Nature of Action

1.      This is a class action against the financial and operational backers of an unlawful online payday lending scheme that has taken advantage of people who are struggling financially by charging extortionate interest rates and engaging in illegal lending practices.

2.      Plaintiffs and members of the Class (defined herein) took out loans through an online payday lender, Plain Green, LLC ("Plain Green"), which purports to be a "tribal lending entity wholly owned by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation." (https://www.plaingreenloans.com).  In reality, however, Plain Green is nothing but a front created for the purpose of enabling an unlawful online payday lending scheme run by and for the primary benefit of non-Native American individuals and entities, including the Defendants named herein.

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

3.      Plain Green was created after existing payday lenders, including Kenneth E. Rees

("Rees") and Think Finance, Inc. (along with its various corporate alter-egos and affiliates,

"Think Finance"), approached the Chippewa Cree Tribe of the Rocky Boy's Reservation (the

"Tribe") and proposed that the Tribe become involved in an online payday lending scheme.[1]  In

the United States, stringent laws have been enacted to prescribe how loans can be made and to

prevent lenders from preying on people in need.  By involving the Tribe in the payday lending

scheme, Rees, Think Finance, and the other payday lenders hoped to circumvent these laws and

take advantage of legal doctrines, such as tribal immunity, to avoid liability for their actions.

After its creation, Plain Green engaged in, and continues to engage in, a series of predatory loan

practices that violate the law and have injured hundreds of thousands of people who are

struggling financially.

4.      Defendants (defined below) are entities who conspired with Rees and Think

Finance to enable and facilitate the unlawful Plain Green online payday lending scheme and/or

exerted substantial management and control over the unlawful lending enterprise.  Details of

Defendants' extensive involvement in the Plain Green scheme have recently been revealed in

documents filed in connection with: (a) litigation brought by the Pennsylvania Attorney General

against Think Finance, Rees, and others, *Commonwealth of Pa. v. Think Finance, Inc., et al.*, No.

2:14-cv-07139-JCJ (E.D. Pa.) ("the Pennsylvania AG Action"); (b) litigation filed in the U.S.

---

[1] A separate class action was brought in this Court against Rees, Think Finance, and
certain other individuals and entities involved in the creation and operation of the Plain Green
payday lending scheme, *Gingras, et al. v. Rosette, et al.*, No. 1:15-cv-00101-gwc (D. Vt.) (the
"Payday Lender Action").  In an Opinion and Order dated May 18, 2016, the Honorable
Geoffrey W. Crawford denied defendants' motions to dismiss and motions to compel arbitration
in the Payday Lender Action.  Defendants in the Payday Lender Action appealed Judge
Crawford's decision to the United States Court of Appeals for the Second Circuit, and the appeal
remains pending. *See Gingras, et al. v. Rosette, et al.*, No. 16-2019 (2d Cir.).


gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 2 -

District Court for the Southern District of New York against Think Finance by a financial advisory firm, *Marlin & Associates Holding LLC v. Think Finance, Inc.*, No. 1:17-cv-04977-RWS (S.D.N.Y.) (the "Marlin Action"); and (c) Chapter 11 bankruptcy proceedings involving Think Finance and related entities in the Northern District of Texas, *In re: Think Finance, LLC, et al.*, No. 17-33964-hdh11 (Bankr. N.D. Tex.) (the "Think Finance Bankruptcy").

Parties

5.      Plaintiff Jessica Gingras is a citizen of Vermont who took out payday loans through Plain Green.

6.      Plaintiff Angela Given is a citizen of Vermont who took out payday loans through Plain Green.

7.      Defendant Victory Park Capital Advisors, LLC ("Victory Park") is registered as a limited liability company in Delaware and Massachusetts and maintains a principal place of business located at 227 West Monroe Street, Suite 3900, Chicago, Illinois.

8.      Defendant Victory Park Management, LLC ("VP Management") is a Delaware limited liability company with a principal place of business located at 227 West Monroe Street, Suite 3900, Chicago Illinois.

9.      Defendant GPL Servicing, Ltd. ("GPLS") is a Cayman Islands exempted company incorporated with limited liability that maintains a principal place of business located at 227 West Monroe Street, Suite 3900, Chicago, Illinois.  According to a sworn declaration and a verified adversary proceeding complaint filed in the Think Finance Bankruptcy, Defendant Victory Park established GPLS in 2011 as a vehicle for funding and controlling the loans issued in the name of North American tribal lenders, including Plain Green.  As also described in those sworn documents from the Think Finance Bankruptcy, GPLS is a special purpose entity that has

gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 3 -

no employees and is completely controlled by Victory Park (directly and/or through certain Victory Park-controlled entities). GPLS is a signatory to a March 11, 2011 Term Sheet entered into with the Tribe, Think Finance, Inc., and Defendant Haynes Investments, Inc. that provided for the creation of Plain Green and set forth other terms of the unlawful tribal lending scheme alleged herein.

10.     Defendant GPL Servicing Agent, LLC (the "Collateral Agent") is a Delaware limited liability company that uses the mailing address of 525 West Monroe Street, Chicago Illinois, which is the Chicago address of the law firm Katten Muchin Rosenman LLP ("Katten Muchin"), counsel to Defendants Victory Park and GPLS. According to a sworn declaration and a verified adversary proceeding complaint filed in the Think Finance Bankruptcy, the Collateral Agent is an affiliate of Victory Park, acts at the direction of Victory Park, and serves as the sole director of GPLS. As also described in the verified adversary proceeding complaint filed in the Think Finance Bankruptcy, the General Counsel of Victory Park, Scott R. Zemnick, has signed documents as the authorized signatory of the Collateral Agent.

11.     Defendant GPL Servicing Trust is a Delaware statutory trust. According to allegations in a complaint filed by the Pennsylvania Attorney General, GPL Servicing Trust was established by Defendant Victory Park, with an effective date of February 11, 2011, for the purpose of holding ownership interests in loans issued through the unlawful tribal lending scheme described herein; Defendant GPLS is the sole beneficiary of the trust.

12.     Defendant GPL Servicing Trust II is a Delaware statutory trust. According to allegations in a complaint filed by the Pennsylvania Attorney General, GPL Servicing Trust II was established by Defendant Victory Park with an effective date of May 20, 2011 for the


gravel &
shea     ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 4 -

purpose of holding ownership interests in loans issued through the unlawful tribal lending scheme described herein.  Defendant GPLS is the sole beneficiary of the trust.

13.     Defendant Haynes Investments, LLC is a Texas limited liability company that maintains a principal place of business at 7515 Lemmon Ave, Hangar R, Dallas, Texas 75209. On its website, Defendant Haynes touts that "[o]ur Native American investments have successfully monetized the tribal advantages of sovereignty to enhance yield while substantially reducing risk."  Haynes Investments, LLC is a successor in interest to a now defunct entity called Haynes Investments, Inc.  "Haynes Investments, Inc., its successors and assigns" is a signatory to the aforementioned March 11, 2011 Term Sheet, along with the Tribe, Think Finance, and Defendant GPLS.  In a July 1, 2016 Engagement Agreement between Think Finance, Marlin & Associates Holding LLC, and Marlin & Associates Securities LLC, "Haynes Investments or any of its affiliates" is listed as an existing servicer of the unlawful tribal lending scheme described herein, along with Defendant Victory Park.

14.     Defendant John Doe 1 is an entity referred to in UCC filings as Princeton Capital Funding and whose address is 55 Water Street, New York, NY 10041.  According to a July 1, 2016 Engagement Agreement between Think Finance and Marlin & Associates Holding LLC and Marlin & Associates Securities LLC, "Princeton Capital Funding and its affiliates" are described as existing servicers of the unlawful tribal lending scheme alleged herein, along with Defendants Victory Park Capital and Haynes.

15.     Defendant John Doe 2 is an entity that has publicly been referred to as Cortex. Defendant Think Finance's website describes Cortex as an "online lending platform fueled by our proprietary fintech decision engine."  According to an August 15, 2017 Complaint filed in the Marlin Action against Think Finance, as of August 2017, Think Finance was planning on



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 5 -

transferring its unlawful tribal lending portfolio to Cortex, and Think Finance's executives had already begun using Cortex email addresses. Further, according to the Marlin Action, Marlin advised Think Finance on a potential restructuring and a potential future separation of Cortex from Think Finance.

16.     Defendant John Doe 3 is an entity that has been publicly referred to as the Circle of Nations Lending Authority ("Circle of Nations"). Circle of Nations purports to be a wholly-owned arm of the Pinoleville Pomo Nation, in Ukiah California. According to the Marlin Action, Circle of Nations is a Think Finance affiliate and designee. On March 21, 2017, Circle of Nations signed a Term Sheet and Letter of Intent with an entity called Receivables Funding LLC and/or Basepoint Capital LLC to refinance the unlawful tribal lending scheme alleged herein in an amount of $175 million, with the option to increase financing up to $250 million upon written request. This transaction closed on or about May 10, 2017.

17.     Defendant John Doe 4 is an entity that has been publicly referred to as Receivables Funding LLC, Delaware Limited Liability Company whose address is c/o Basepoint Administrative, LLC, 44 S. Broadway, 11th Floor, White Plains, New York, 10601. On March 21, 2017, Receivables Funding LLC and/or Basepoint Capital LLC signed a Term Sheet and Letter of Intent with Circle of Nations to refinance the unlawful tribal lending scheme alleged herein in an amount of $175 million, with the option to increase financing up to $250 million upon written request. This transaction closed on or about May 10, 2017.

18.     Defendant John Doe 5 is an entity formed under the laws of the Cayman Islands that has been publicly referred to as VPC/TF Trust I. According to the Pennsylvania AG Action, VPC/TF Trust I was established by Defendant Victory Park for the purpose of holding ownership interests in some loans issued through the unlawful tribal lending scheme described herein.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

19.     Defendants John Doe 5-10 are additional parties who participated in the unlawful scheme described herein and are responsible for the harm suffered by Plaintiffs and the Class, but whose identities are unknown to Plaintiffs at this time despite Plaintiffs' best efforts to identify such parties.

Other Interested Parties

20.     Joel Rosette is or was (at times relevant to the claims set forth herein) the Chief Executive Officer ("CEO") of Plain Green and, in that capacity, is or was responsible for all operations of Plain Green. Article 7.6 of the Articles of Organization of Plain Green, LLC grants Plain Green's CEO the power "to manage the Company on a daily basis." As CEO, Rosette also has or had the authority to "hire and terminate employees when necessary." *Id.* As a result, Rosette is or was responsible for, and able to stop, the illegal activity described in this Complaint. In his position as CEO of Plain Green, Rosette has or had the authority to prevent the credit reporting and illegal keeping of a loan balance for the Plaintiffs. Rosette is a citizen of Montana and not a citizen of Vermont.

21.     Ted Whitford ("Whitford") is or was (at times relevant to the claims set forth herein) a member of Plain Green's Board of Directors. The Plain Green Board of Directors has or had the power to fire the CEO of Plain Green and appoint a new CEO who will comply with the law. Whitford is a citizen of Montana and not a citizen of Vermont.

22.     Tim McInerney ("McInerney") is or was (at times relevant to the claims set forth herein) a member of Plain Green's Board of Directors. The Board of Directors has or had the power to fire the CEO of Plain Green and appoint a new CEO who will comply with the law. McInerney is a citizen of Montana and not a citizen of Vermont.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 7 -

23.     Jay Abbasi ("Abbasi") purports to be the current CEO of Plain Green. According to a sworn declaration submitted by Abbasi to the United States Court of Appeals for the Second Circuit on November 16, 2016, Plain Green amended its Articles of Organization on or around August 10, 2016 "to provide that it would be overseen by a single manager instead of a Board of Directors." Abbasi's sworn declaration also states that the Plain Green Board of Directors has been dissolved and that he has been "serving as the sole manager of Plain Green since around August 2016" and has "been assigned all managerial authority previously vested with the Board of Directors." Abbasi is a citizen of Montana and not a citizen of Vermont.

24.     Think Finance, LLC is a Delaware limited liability company with a principal place of business located at 5080 Spectrum Drive, Suite 700 West, Addison, Texas 75001. It is the successor to a Delaware corporation called Think Finance, Inc., which was headquartered at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109. (Collectively, Think Finance LLC and Think Finance, Inc. are referred to herein as "Think Finance"). Think Finance formerly had the name ThinkCash, Inc. Its principal place of business is outside the State of Vermont. On October 23, 2017, Think Finance LLC filed for Chapter 11 bankruptcy.

25.     Kenneth E. Rees is the former President, Chief Executive Officer, and Chairman of the Board of Think Finance. He is currently the Chief Executive Officer of Elevate Credit, Inc., an entity spun off from Think Finance in approximately May 2014. At times relevant to the conduct alleged herein, Rees maintained a controlling interest and operational role in Think Finance. He has personally designed and directed the business activity described in this Complaint. He is a citizen of Texas and not a citizen of Vermont.

26.     TC Loan Service, LLC ("TC Loan") is a Delaware limited company located at 5080 Spectrum Drive, Suite 700 West, Addison, Texas 75001. It previously maintained a



grave & shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

business address at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  Its principal place of business is outside the State of Vermont.  On October 23, 2017, TC Loan filed for Chapter 11 bankruptcy.

27.     TC Decision Sciences, LLC ("TC Decision Sciences") is a Delaware limited liability company located at 5080 Spectrum Drive, Suite 700 West, Addison, Texas 75001.  It previously maintained a business address at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  Its principal place of business is outside the State of Vermont.  On October 23, 2017, TC Decision Sciences filed for Chapter 11 bankruptcy.

28.     Tailwind Marketing, LLC ("Tailwind Marketing") is a Delaware limited liability company located at 5080 Spectrum Drive, Suite 700 West, Addison, Texas 75001.  It previously maintained a business address at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  Its principal place of business is outside the State of Vermont.  On October 23, 2017, Tailwind Marketing filed for Chapter 11 bankruptcy.

29.     Sequoia Capital Operations, LLC ("Sequoia") is a Delaware limited liability company with its principal place of business at 3000 Sand Hill Road, Building 4, Suite 180, Menlo Park, California.  Its principal place of business is outside the State of Vermont.

30.     Technology Crossover Ventures ("TCV") is a Delaware corporation with its principal place of business located at 528 Ramona Street, Palo Alto, California, 94301.

31.     TCV V L.P. is a member fund of TCV whose address is c/o Technology Crossover Ventures, 528 Ramona Street, Palo Alto, California 94301.

32.     Plain Green LLC ("Plain Green") is a limited liability company that purports to be a wholly owned arm of the Chippewa Cree Tribe of the Rocky Boy's Reservation.  Plain Green's physical address is 93 Mack Road, Suite 600, Box Elder, Montana 59521.


gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 9 -

33.     The Chippewa Cree Tribe of the Rocky Boy's Reservation is a federally recognized Native American tribe located in Box Elder, Montana.

Jurisdiction and Venue

34.     This Court has jurisdiction over this dispute pursuant to federal question jurisdiction under 28 U.S.C. § 1331.  The Court also has jurisdiction over this action pursuant to 18 U.S.C. § 1965.

35.     In addition, this Court has diversity jurisdiction because diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.

36.     Additionally, this Court has jurisdiction under the Class Action Fairness Act.  28 U.S.C. § 1332.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

37.     This Court has personal jurisdiction over Defendants because their activities in the State of Vermont, conducted both directly and through their alter egos, as alleged herein, give rise to the claims in this action.  This Court also has personal jurisdiction over Defendants under 18 U.S.C. § 1965(b).

38.     This Court may enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

39.     Venue is proper in this Court under 18 U.S. C. § 1965 and 28 U.S.C. § 1391(b)(2).

Facts

40.     Plaintiffs Jessica Gingras and Angela Given fell victim to a sophisticated loan sharking operation that was specifically designed by the Defendants to ensnare unsuspecting victims.  Ms. Gingras and Ms. Given visited a bright and cheerful website,


gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

https://www.plaingreenloans.com, which promised to help them secure a loan.  This website informs visitors that with an easy online application, they can obtain an answer within a matter of seconds:



41.     The website proclaims that Plain Green is a better option than a payday loan:



42.     However, the cheerful cartoon characters do not tell the whole story.  The reality of Defendants' operation is far different than these shiny, innocent looking characters suggest. The Plain Green enterprise was created when Defendant Victory Park and Kenneth Rees, the masterminds of this illegal scheme, saw Rees's former payday lending business, ThinkCash, shut down by federal regulators.  Victory Park and Rees were undeterred by this setback and sought a new way to prey on unsuspecting people.  Rees and Victory Park believed that cloaking their

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 11 -

online payday lending operation in tribal immunity was the answer. So, Rees and Victory Park rebranded the payday lending business Think Finance and approached the Tribe with a deal. Victory Park, Haynes, Rees, and Think Finance would provide everything the Tribe needed to run a successful payday loan enterprise and micromanage the enterprise if the Tribe would let them exploit the concept of tribal immunity to stymie state and federal regulators. In return, the Tribe would receive 4.5% of the revenues.

### The Payday Lending Industry

43.　　Payday lending takes advantage of people's need for money. While marketed as a short-term loan for emergency cash, the loans are usually not short term at all. A typical borrower cannot repay the entire amount of the loan right away. Instead, to avoid default, the borrower will often roll the loan over into another loan or take out a loan from an alternative lender. As interest continues to accrue on these loans, borrowers get stuck in a vicious debt trap from which they cannot escape. More of the borrowers' limited resources are diverted to interest on the payday loans, and borrowers struggle to meet their basic needs, such as food, shelter, and medical care.

44.　　A typical payday loan has an extortionate interest rate of 200% or more. For example, Plain Green's website stated that it lends at rates of 299.17% to 378.95% for first time borrowers. This type of loan causes people who are struggling financially to pay far more in interest within the term of the loan than they originally borrowed in principal.

45.　　Payday lenders justify these exceptionally high interest rates by pointing to the allegedly short-term nature of the loans and the supposedly higher risk profile of the borrowers.

46.　　However, payday lenders, like Defendant Victory Park and Think Finance, do not examine the borrower's ability to repay the loan in a short period of time.



gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

47.     Instead, payday lenders, such as Defendant Victory Park and Think Finance, create a repayment plan that is designed to extend the repayment period so that the lender can obtain substantial amounts from the high interest payments.

48.     The risk to payday lenders, like Defendant Victory Park and Think Finance, has been exaggerated because payday lenders take advantage of a variety of techniques to ensure that they are repaid.

49.     For example, Defendant Victory Park and Think Finance create financial arrangements so that they have automatic access to a borrower's bank account and, through Plain Green, can withdraw money without further action from the borrower.  Defendant Victory Park and Think Finance require that borrowers agree to Automatic Clearing House ("ACH") withdrawals from their accounts before extending credit.  This financial arrangement substantially reduces the risk of non-payment.

50.     Through Plain Green, Defendant Victory Park and Think Finance also lend to people who have established periodic payments that are deposited into bank accounts, such as social security, disability, and veterans' benefits.  After Plain Green has access to a borrower's bank account, it can simply remove these deposits from the account and insure that it is paid.

51.     Defendants Victory Park, VP Management, and GPLS (including the various entities controlled by or affiliated with them) (collectively referred to herein as the "Victory Park Defendants"), and Rees and Think Finance control the operations of Plain Green by, among other things, exerting control over Plain Green and its officers and directors including Rosette, Whitford, McInerney, and Abassi, and use various contractual provisions to keep their usurious practices from review.  These contract provisions include phony choice of law provisions and



gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 13 -

provisions claiming tribal immunity. These contractual provisions are unconscionable and unenforceable.

52.     In some cases, Rees and Think Finance, through their control over Plain Green and its officers and directors including Rosette, Whitford, McInerney, and Abassi, have blocked borrowers' access to their Plain Green accounts so that the borrowers cannot determine what they have paid. In these cases, Think Finance has refused to allow the borrowers to have access to the documents that purportedly create a binding contractual relationship between the borrowers and Plain Green.

53.     The Victory Park Defendants, and Rees and Think Finance, through their control over Plain Green and its officers and directors, including Rosette, Whitford, McInerney, and Abassi, also misrepresent that their loans are intended to be short-term loans. For example, through Plain Green, the Victory Park Defendants and Think Finance state that their loans "are designed to help you meet your emergency borrowing needs." Contrary to these representations, the loan repayment schedule is not designed to be a short-term loan.

54.     Rees and Think Finance, through their control over Plain Green and its officers and directors including Rosette, Whitford, McInerney, and Abassi, also misrepresent that their loans are legitimate loans by reporting loan information to credit rating agencies. When certain borrowers fail to make payments, even on illegal loans, Think Finance reports the failure to make a payment as if it were a failure to make a payment on a legitimate loan.

## Defendants' Efforts to Avoid Liability

55.     Defendants, in concert with payday lenders Rees and Think Finance, have gone to great lengths to avoid any responsibility for their actions and have created structures to try to prevent the proper application of law.

gravel &
  shea |ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 14 -

56.     In fact, Plain Green's very existence is an effort to avoid liability.  Plain Green's predecessors in interest were not tribal entities.  ThinkCash, Inc. (n/k/a Think Finance, Inc.) is a Delaware corporation.  ThinkCash was formed in or around 2001 as a payday lender that operated over the Internet.

57.     To avoid state limits on interest rates, ThinkCash used a lending model known in the money lending industry as "rent-a-bank."  Payday lenders that were prohibited by state laws from making extortionate loans partnered with a bank so that the bank was the nominal lender.  At the same time, the payday lender would market, fund, and collect the loan.  The payday lender also performed other lending functions.  Because the banks were insulated from state laws by federal bank preemption, the payday lenders were able to use the rent-a-bank scheme to avoid state laws.

58.     During this time, First Bank of Delaware ("FBD") developed a specialty in providing banking services to payday lenders.  FBD developed a relationship with ThinkCash that enabled ThinkCash to offer high interest rate loans and represent itself as "ThinkCash by First Bank of Delaware."

59.     ThinkCash and FBD continued this relationship despite enforcement and regulatory efforts to stop the activity.  The FDIC instituted an enforcement action in 2008 that culminated in a consent order.  That consent order required FBD to end its relationship with a number of entities that had used FBD in the rent-a-bank scheme, including ThinkCash.

60.     In July 2010, Defendant Victory Park provided a $100 million commitment to participate in the "Universal Fund."  The Universal Fund purchased payday loans that were originated under the Think Cash/FBD scheme.



gravel &
shea   ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

61.     In an attempt to avoid liability and obscure its participation in the illegal scheme and fraudulent enterprise, Defendants Victory Park and VP Management executed a series of agreements.

62.     On July 9, 2010, VP Management executed a Declaration of Trust of VPC/TF Trust I (the "VPC Trust.")  The purpose of the VPC Trust was to acquire and hold Universal Participation Interests and to enter into, execute and perform its obligations under the VP Participation Agreement and the VP Administrative Agency Agreement ("Universal Fund").

63.     On July 28, 2009, VP Management entered into an Administrative Agency Agreement with TC Administrative Services, LLC ("TC Administrative").  Think Finance is the sole member of TC Administrative.

64.     FBD is no longer in business.  In 2012, its shareholders voted to dissolve the bank.  Soon thereafter, the United States Department of Justice announced a $15 million civil penalty to be paid by FBD.

65.     After its "rent-a-bank" scheme ended, ThinkCash and Rees, and Defendants Victory Park and VP Management developed plans for another law avoidance scheme called "rent-a-tribe."

66.     The concept behind the "rent-a-tribe" scheme is to exploit tribal immunity in the same way that ThinkCash exploited federal bank preemption.  Under the scheme, the loans are made in the name of an entity affiliated with a Native American tribe, but the Victory Park Defendants, along with Rees, ThinkCash, Think Finance (and entities controlled by or affiliated with it) combined their resources and expertise to tightly manage and control the funding, marketing, issuance, and collection of the loans.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

67.     Indeed, in a June 4, 2012 article in Bloomberg Ken Rees stated that Think Finance "has shifted away from doing direct lending itself because 'byzantine state laws' made it complicated." According to Rees, "Native American tribes . . . don't have to look to each state's lending laws."

68.     Using the "rent-a-tribe" scheme, Rees, ThinkCash, and Think Finance exploited their customer base to generate future loans. One of the "rent-a-tribe" schemes that Rees, ThinkCash, Think Finance, the Victory Park Defendants and Haynes started was Plain Green, which was affiliated with the Chippewa Cree Tribe of the Rocky Boy's Reservation. ThinkCash transferred existing ThinkCash loans and ThinkCash customer databases to Plain Green. In addition, ThinkCash designed the web platform used by Plain Green so that existing ThinkCash customers visiting the ThinkCash website would be routed automatically to the Plain Green website.

69.     The Victory Park Defendants helped design and direct the transition from the "rent-a-bank" scheme to the "rent-a-tribe" scheme in conjunction with Rees and Think Finance. On January 6, 2011, Defendant Victory Park changed the name of VPC/TF Fund I Ltd. to GPLS for the purpose of holding participation interests in "tribal" loans. GPLS was designed as a pass-through, special purpose vehicle through which Defendant Victory Park and Think Finance would collect revenue from the rent-a-tribe scheme. Specifically, after payment of all operating expenses, GPLS would pay a fixed rate of return to investors (Victory Park was to receive a fixed rate of 20%) and the remaining revenue would be distributed to Think Finance. Defendant Victory Park is the sole manager of GPLS.

70.     GPLS would purchase a 99% participation interest in the loans nominally issued by the tribal entities. The tribes would keep a 1% interest in the loans plus a "service fee."



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

71.     In February 2011, Defendant Victory Park, in conjunction with Rees and Think

Finance designed the flow of funds for the rent-a-tribe scheme:

- Through GPLS, Defendant Victory Park would deposit $1 million in a bank account at a John Doe Defendant bank called the Funding Account that would be owned by the tribal entity. This amount would cover a few days of loan originations and the anticipated 1% ownership stake that the tribe would retain.

- The tribe would then begin originating loans on a daily basis that were funded from the Funding Account, via nightly ACH processing provided by a John Doe Defendant bank.

- Two days after a loan was approved, the tribal entity would sell the 99% participation in those loans at book value to GPLS. Through GPLS, Defendant Victory Park would then deposit in the Funding Account an amount equal to the loan participations that GPLS had purchased. The proceeds from selling the participation interests would then be used by the tribal entity to originate additional loans.

- Each day, the same bank would process customer payments via ACH through a John Doe Defendant bank and would deposit those funds in a Collection Account.

- TC Decision Sciences, as the exclusive "technology and services provider" to the tribal entity, would distribute the payments in the Collection Account attributable to the participation interest of GPLS to GPLS.

- Each month, through GPLS, Defendant Victory Park would reconcile the revenue received from the loans and distribute an agreed-upon amount of revenue sharing to the tribal entity—4.5% in the case of Plain Green.

- Also each month, Tailwind Marketing and TC Decision Sciences would invoice the tribal entity for fees. These invoices would be provided to Victory Park, through GPLS, for reimbursement so that the tribal entity would not have to make any out-of-pocket payments.

72.     Notably, an integral aspect of the "rent-a-tribe" scheme was that the tribes would

not actually pay the contracted service fees to the Think Finance entities. Instead, these fees

would be reimbursed by Defendant Victory Park, through GPLS.

73.     In late 2011, Defendant Victory Park increased its funding from GPLS from $100

million to $150 million. Beginning in 2012, Defendant Victory Park created separate tranches to



gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

allow investors to invest in GPLS alongside Defendant Victory Park, and Defendant Victory Park increased funding of GPLS from $150 million to $250-$300 million. In addition, Think Finance was a principal investor in GPLS, having purchased 25% of outstanding shares.

## RICO

### The Enterprise

74.     Plain Green is an enterprise within the meaning of 18 U.S.C. § 1961(4). As described below, Defendants Victory Park, VP Management, and GPLS, acting through and in the name of GPLS (collectively, the "Victory Park Defendants"), in conjunction with Rees and Think Finance, engaged in a scheme to defraud and to collect unlawful debts through the Plain Green enterprise.

### The Plain Green Enterprise

#### *Formation of the Plain Green Enterprise*

75.     In or around March 2011, Rees and Think Finance, approached the Tribe, on behalf of themselves and the Victory Park Defendants about forming a tribal entity (*i.e.* Plain Green) in furtherance of a scheme to collect unlawful debts over the Internet.

76.     As part of those negotiations, the Victory Park Defendants, acting through and in the name of GPLS, in conjunction with Rees and Think Finance, prepared a term sheet that reflected the essentials of the transaction (the "Term Sheet"). (Exhibit A hereto.) While Defendant GPLS is a signatory to the Term Sheet, as alleged herein, GPLS was and is completely controlled by Defendant Victory Park and/or other entities controlled by Victory Park. The scope of the enterprise was to be "on a nationwide basis through the internet." *Id.* at 1.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

77.     The Term Sheet required that the Tribe adopt new laws that would be favorable to Defendant GPLS (and, by extension, Defendants Victory Park, VP Management, and entities controlled by and/or affiliated with them), and Rees and Think Finance, and otherwise enable the practice of illegal online payday lending. The Term Sheet required that: "The Tribe will adopt a finance code that is acceptable to all parties and provide for the licensing of an arm of the tribe to engage in consumer lending." *Id.* at 1.

78.     The Term Sheet further provided that Defendant Haynes Investments "will arrange to provide funding to the Tribe to enable it to make each of the Loans." *Id.* at 1.

79.     On March 10, 2011, Neal Rosette, Robin Kovash, and Billi Anne Morisette had a conference call with Encore Services, LLC, a financial advisor that the Tribe had retained to opine on the arrangement proposed by Rees and Think Finance. The substance of this call was memorialized in a March 11, 2011 email sent by Encore, which stated that the rent-a-tribe structure "will undoubtedly raise enquiries from the Federal agencies potentially including questions related to breach of banking regulations, money laundering, tax evasion and even Racketeering (RICO)."

80.     In the email, Encore opined that "the Tribe is a shield to delay legal process, and is ultimately expendable." The email concluded that the "rent-a-tribe model" would be "good for [Think Finance], not good for the tribe. The 'pass through' nature of the relationship creates a weakened legal structure, more likely to be challenged by the states, and more importantly, a 'poke in the eye' to more powerful Federal regulators. Economically this has a long term detrimental effect on the tribe's ability to attract other lenders and investors." Nonetheless, desperate for funds, the Tribe agreed to the proposal.

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 20 -

81.     On March 18, 2011, Defendant GPLS entered into a Participation Agreement with Plain Green. Scott Zemnick, General Counsel of Defendant Victory Park Capital, signed the Participation Agreement for Defendant GPLS. Billi Anne Morsette signed on behalf of Plain Green.

82.     Haynes had a role in negotiating the Participation Agreement and was to receive any notices due to Plain Green under the Participation Agreement.

83.     Under the Participation Agreement, Defendant GPLS had the "right, but not the obligation," to purchase undivided ninety-nine percent participation interests in payday loans offered by Plain Green.

84.     The Participation Agreement specifically states that "the relationship between the Parties hereunder is not intended to be that of debtor and creditor."

85.     Because of the structure of the Participation Agreement and other agreements, the Victory Park Defendants controlled whether and to what extent Plain Green made payday loans to borrowers.

*Operation of the Plain Green Enterprise*

86.     The Victory Park Defendants intentionally and willfully dominated and still dominate the operations of Plain Green, and have collaborated with Rees, Think Finance, and/or other Think Finance-related entities in that regard. Other than the tribal immunity that they attempted to purchase, the Victory Park Defendants, and Rees and Think Finance, provide everything that the enterprise needs to operate.

87.     The Victory Park Defendants, provide the necessary funding for use as lending capital for the payday lending scheme and also provide substantial oversight, management, and control over the scheme.



gravel &
shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 21 -

88.     Defendant Victory Park (and/or entities controlled by it) receive daily reports concerning the payday loans generated by the Plain Green enterprise.  Plain Green does not generate these reports.  Instead, Think Finance generates the reports.

89.     Plain Green maintains a "Reserve Account" from which it takes money to fund payday loans.  The Reserve Account only contains enough money to fund a limited number of days of payday loans.  The Victory Park Defendants control whether additional funds are placed in the "Reserve Account."

90.     The Victory Park Defendants used their control over the Plain Green enterprise to halt loans in August 2013 and the purchase of certain participation interests because banks were becoming less willing to process ACH payments on payday loans.

91.     In a separate incident, in October 2013, the Victory Park Defendants temporarily suspended the purchase of certain participation interests after the United States District Court for the Southern District of New York, in *Otoe Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Serv.*, 974 F. Supp. 2d 353 (S.D.N.Y. 2013), denied a motion for a preliminary injunction against the New York Department of Financial Services, which had sent cease and desist letters regarding the Victory Park Defendants' and Rees and Think Finance's payday loans.

92.     Haynes was responsible for assembling critical pieces to the successful operation of the enterprise.  Haynes was in charge of due diligence to find alternative ACH processors after the New York Department of Financial Services defeated the attempt to obtain a preliminary injunction against the enforcement of New York laws against usury.

93.     When the Victory Park Defendants stopped purchasing participation interests, Think Finance and Rees would, in turn, instruct Plain Green to shut down origination of payday loans.



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

94.     The Victory Park Defendants also controlled the volume of loans by controlling the amount of marketing that Think Finance and Rees did for Plain Green. Employees of Think Finance consulted with employees of Victory Park about the amount of marketing for the payday loans.

95.     The Victory Park Defendants were also offered the opportunity to review contracts that Think Finance was purported to be entering with consumers.

96.     Under the aforementioned March 18, 2011 Participation Agreement, Defendant GPLS received a report from Think Finance about the loans that were extended to borrowers that were eligible to be purchased by GPLS. The Participation Agreement further specified that Defendant GPLS was purchasing its 99% "participation interest based upon GPLS's independent examination, study, inspection, and knowledge of the participation interest and the laws and that GPLS is relying upon its own determination of the quality, value, and condition of the participation interest and the loans and not on any information provided or to be provided by Plain Green."

97.     The Victory Park Defendants also signed other agreements including the Third Amended and Restated Administrative Agency Agreement ("Agency Agreement") and the Second Amendment to Amended and Restated Guaranty and Security Agreement ("Guaranty Agreement"), dated October 4, 2011.

98.     Under the Agency Agreement, Defendants GPS Servicing Trust, GPL Servicing Trust II, and GPLS agreed with TC Administrative that TC Administrative would perform daily loan settlement for GPLS, GPL Servicing Trust, and GPL Servicing Trust II.

99.     TC Administrative also had the obligation to purchase the interests in payday loans held by GPLS that were past due by 60 days.



gravel &
    shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 23 -

100. TC Administrative paid a monthly fee to Defendant Victory Park Management.

101. TC Administrative had the right to request additional equity investment into Defendant GPLS. That additional equity investment would then be used to fund additional payday loans.

102. Under the Guaranty Agreement, Think Finance and Think Finance SPV, LLC, a wholly owned subsidiary of Think Finance, agreed with Defendant Victory Park to guarantee obligations related to TC Administrative duties under the Agency Agreement.

103. Rees signed the Guaranty Agreement on behalf of the Think Finance entities. General Counsel of Defendant Victory Park Zemnick signed the Guaranty Agreement on behalf of Defendant Victory Park Capital Advisors.

104. The Victory Park Defendants were aware of the illegality of the loans that were being made. Thomas M. Welch, a partner at Victory Park Capital Advisors, received email communications in March and April of 2013 that showed that certain states did not allow the loans at issue in this case to be made. The identification of states where loans were illegal was done by unnamed attorneys for Think Finance from the law firm Patton Boggs and Claudia Callaway, attorney for the Victory Park Entities from the law firm Katten Muchin Rosenman LLP.

105. Notwithstanding the legal advice relating to the illegality of loans and adverse legal decisions, Defendants continued to extend loans to existing payday loan customers.

106. Other email correspondence from Think Finance's Chief Financial Officer (and sent to Thomas Welch, a partner at Defendant Victory Park) shows that the decision about whether to make loans into a particular state was based on how aggressively states enforced their



gravel &
shea   ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 24 -

laws. The Victory Park Defendants did not have concern for the legality of their loans, but were more concerned about avoiding responsibility for the actions that they knew were illegal.

107.    Rees and Think Finance provided software to determine whether a particular loan would be profitable. Rees and Think Finance provided "risk management, application processing, underwriting assistance, payment processing, and ongoing customer service support coterminous with the software license agreement and market[ing] and/or identification of access channels for consumer loans on the Tribe's behalf (jointly 'Services')".

108.    The Victory Park Defendants, and Rees and Think Finance, defined precisely the type of loan Plain Green would offer to customers and the terms on which the loan would be offered. They required the loans to be an installment loan with a maximum amount of $2,500 and a minimum repayment period of two months and a maximum repayment period of two years.

109.    Pursuant to the Term Sheet created by the Victory Park Defendants, and Rees and Think Finance, Plain Green was required to charge interests rates that were illegal and usurious. The interest rates were to vary from an annual percentage rate of 60% to 360%.

110.    Also pursuant to the Term Sheet, the Victory Park Defendants, and Rees and Think Finance required that Plain Green enter into a relationship with a U.S. bank to process loan transactions using the ACH system. In addition, they required that Plain Green develop the capacity to process remote checks.

111.    In the Term Sheet, the Victory Park Defendants, and Rees and Think Finance also directed Plain Green to establish a reserve account to "deal with any regulatory issues, lawsuits or other controversies involving the Tribe or its lending activities." The Victory Park Defendants, and Rees and Think Finance, however, did not allow Plain Green to control the



gravel &
shea  ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 25 -

account. Instead, the account was under the control of Jones & Keller, PC, a law firm that the Term Sheet required Plain Green to use.

112.    The Term Sheet created by the Victory Park Defendants, and Rees and Think Finance, required that Plain Green enter into an attorney client relationship. It stated that: "Pepper Hamilton, LLP ("Pepper") and Jones & Keller, PC ("J&K") shall be counsel to the Tribe."

113.    Neal Rosette, Plain Green's former CEO, stated in an affidavit that, "[p]rior to Think Finance Inc.'s engagement with Plain Green, LLC, "the Tribe had not previously used the legal services of Pepper Hamilton nor had the Tribe had any knowledge that Pepper Hamilton even existed." In fact, "Think Finance, Inc. brought Pepper Hamilton to the Tribe even though the Tribe had retained the services of [another attorney] handling all Tribal lending activities." "Although Pepper Hamilton nominally represented the Tribe in contracting with Plain Green, LLC, its fees were paid for by Think Finance, Inc. and Pepper Hamilton received a bonus for getting the Tribe to sign on to the agreement with Think Finance." The association between Think Finance and Pepper Hamilton was so close that Think Finance did not bother to send its own attorneys to meetings with the Tribe. Pepper Hamilton also has represented the "Tribal Defendants" in the separate class action brought against certain officials of the Tribe and Think Finance (and entities controlled by Think Finance) filed in this Court, *Gingras v. Rosette, et al.*, No. 1:15-cv-00101-gwc (D. Vt.) and has continued to represent the Tribal Defendants in the Second Circuit Court of Appeals, *Gingras v. Think Finance, et al.*, No. 16-2019 (2d Cir.).

114.    At the behest of the Victory Park Defendants, in conjunction with Rees and Think Finance, Plain Green, through Rosette, Whitford, and McInerney entered into payday lending relationships with John Doe Defendant banks to process ACH transactions. Those bank

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 26 -

relationships enabled Plain Green to process ACH transactions for Plaintiffs and the Class. The ACH transactions involved interstate commerce because they flowed through Plain Green in Montana, Plaintiffs in Vermont and Class members throughout the United States, other targets of the illegal lending scheme and different intermediaries throughout the United States.

115.     Plain Green operates a website at https://www.plaingreenloans.com. The website furthers the illegal financial transactions. The website allows individuals to enter information to execute ACH wire transfers to the individual and to debit the person's account in the purported repayment of the illegal debt. The website involves transactions in interstate commerce.

### Racketeering Activity

116.     Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, intentionally and willfully committed mail fraud and wire fraud through the use of ACH transactions to put money into Plaintiffs' and class members' bank accounts, by withdrawing funds from the accounts of Plaintiffs and class members while maintaining that those withdrawals were legitimate, by using the Internet to obtain consent to a fraudulent lending agreement and arbitration agreement, and by using the mail to collect payments and communicate with other parts of the Plain Green enterprise.

117.     Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance had a plan or scheme to defraud thousands of people in a financially challenged position by extending loans at illegally high and extortionate interest rates, while at the same time claiming that the business was legitimate and in compliance with the law. To advance this scheme, Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance established intermediaries like the Plain Green enterprise and Rosette, Whitford, and McInerney to initiate wire transfers and mailings and to operate the website through which



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

information was collected from the victims of the scheme and purported agreements were exchanged with targets of the scheme. Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance hoped to avoid liability by falsely claiming that they only provided money and services to Plain Green, when in reality they created Plain Green and controlled and managed its operation through an assortment of subsidiaries and affiliates like Tailwind Marketing, TC Loan, TC Decision Sciences, and TC Administrative.

118.    Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance intended to defraud the victims of the scheme.

119.    The use of the mail and wires was reasonably foreseeable because the form documents that Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance created specifically called for the use of ACH transactions or mail to make payments on the illegal loans.

120.    The racketeering activity is related and continuous. The thousands of ACH transactions served and continue to serve the central scheme created by Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance to make illegal loans at extortionate interest rates. The thousands of ACH transactions served the Plain Green enterprise's purpose of evading state laws, defrauding people in financially challenged positions, and making profits. The scheme to evade state laws was carried out by Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance through their control and domination of Plain Green.

121.    The use of the Plain Green website is also related and continuous. The website was used and is used to deceive the victims into believing that the transactions were and are legitimate and consistent with the law. The website collects personal data that is then used to



gravel &
shea ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 28 -

take money from individuals who have fallen victim to the fraudulent scheme. The website transmits and transmitted the loan agreements to potential victims through the wires.

122.    The Plain Green website also makes a number of misrepresentations. For example, the website creates the impression that the loans are a good option for short term financing by making the claim that the loans are "less expensive than a payday loan."

123.    The Plain Green website also makes a deceptive comparison between the interest rates paid to the Defendants and the payment of various late fees, such as reconnect fees from utilities or overdraft fees from banks. The website compares its loans, which have repayment periods of months or years, to the reconnect and overdraft fees, which Defendants Victory Park, VP Management, and GPLS, through Plain Green, arbitrarily state have a 14-day repayment period. This is not an accurate comparison. The comparison makes the misleading claim that the interest rates charged to Plaintiffs and members of the Class are actually cheap. This is false and misleading.

124.    Rees and Think Finance exercise control over and operate all elements of the website. Software created or owned by Think Finance and/or its affiliates determines which loan requests generated through the website will be accepted by Plain Green and which loan requests will be declined.

125.    Rees and Think Finance also perform the function of customer service, verification of accounts, and collection of debt on behalf of Plain Green.

126.    Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, exercised control over the drafting of the lending and arbitration agreements through their close association with the attorneys drafting the documents. Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, did so in order to ensure that



gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

victims of Plain Green would opt for ACH transfers to accept money and then Defendants would be able to take money from the victims' bank accounts. Directing the targets of the fraudulent scheme to choose ACH transfers increases the chances of being able to take money from the targets of the scheme on a regular basis. With an authorization to take money from the bank accounts, Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, did not have to rely on the targets sending money to them. In addition, by creating an ACH authorization, Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, forced the targets of the fraudulent scheme to take many actions to stop the transfers. The additional time needed to complete these tasks meant that Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, could extract additional periodic payments before their authorization was revoked.

127.     The Term Sheet reflects the control that Defendants Victory Park, VP Management, and GPLS (as a signatory), along with Rees and Think Finance, had over the use of ACH transactions as part of the scheme to defraud and the control that they exercised over the process.

128.     Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, used loan agreements as tools to further deceive Plaintiffs. Defendants used both the website and the ACH transactions in conjunction with each other to further the enterprise and the fraudulent schemes.

129.     The illegal activity started in or around March 2011 and has continued to the present. Plain Green has used the above described ACH system and website for over six years.

130.     Had Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, not established and ran the Plain Green enterprise, they would not have ensnared


gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

Plaintiffs in the illegal scheme and obtained Plaintiffs' personal information, including access to their bank accounts, through Plain Green's website.

131.    Plaintiffs and the Class would not have had their bank accounts debited with illegal ACH transactions in excess of any legal amount of interest but for Defendants Victory Park, VP Management, GPLS and Haynes, along with Rees and Think Finance, establishing and running the corrupt Plain Green enterprise.

132.    Plaintiffs and the Class were injured when Defendants Victory Park, VP Management, GPLS and Haynes, along with Rees and Think Finance, chose to defraud them and collect extortionate and usurious interest rates far in excess of the legal limit.  The withdrawal of money by Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, part of the Racketeering activity and itself a predicate act, caused Plaintiffs' injury.

133.    Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, chose Plaintiffs as the intended targets for the enterprise and the racketeering activity. Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, targeted Plaintiffs because they met underwriting criteria that showed they badly needed money in the short term, but could pay off small amounts over the long term.  Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, used computer algorithms to make that determination.

<u>Unlawful Debt</u>

134.    Through the Plain Green enterprise, Defendants Victory Park, VP Management, and GPLS, along with Rees and Think Finance, intentionally and willfully engaged in the collection of unlawful debts.  Indeed, Defendants Victory Park, VP Management, GPLS and Haynes, along with Rees and Think Finance, formed Plain Green for the purpose of lending



gravel &
    shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 31 -

money at a usurious rate and avoiding state laws related to usury. Plain Green's website demonstrates that it is continuing in the business of lending at usurious rates. The website stated that Plain Green lends at rates of 299.17% to 378.95% for first time borrowers. The Plain Green website details how its other loans range from 60% to 378.95% based on the amount of money taken out.

135.    The debts incurred by Plaintiffs are unenforceable under Vermont law and the laws of other states throughout the United States. The interest rates on the debt that they incurred were more than twice the interest rate allowed under Vermont law. *See* 9 V.S.A. § 41a.

136.    The interest rates charged to Class members exceed the maximum allowable interest in their respective states by more than twice the legal limit.

137.    In operating and conducting the affairs of the Plain Green enterprise, Defendants Victory Park, VP Management, GPLS and Haynes, in conjunction with Rees and Think Finance, used the proceeds from the collection of lawful debt to further the operations and objectives of the Plain Green enterprise.

138.    At the direction of Think Finance and Rees, TC Decision Sciences provides customer service, verification, and collections of customer accounts.

139.    At the direction of Think Finance and Rees, Tailwind Marketing provides information on potential targets for the illegal lending scheme. As discussed above, Rosette, Whitford, McInerney and Abassi pay Tailwind Marketing a fee for each of the targets it provides to the enterprise.

140.    Sequoia, TCV, and TCV V provide funds to further the operations of the Plain Green enterprise and reap significant returns on the investment of their funds. Sequoia, TCV, and TCV V are fully aware of the practices of the Plain Green enterprise and know that the

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 32 -

practices violated the law. Sequoia, TCV, and TCV V do not make investments without substantial due diligence into their investments, including legal review of the activities of their investment vehicle.

141.    Sequoia, TCV, and TCV V executed a series of agreements that documented their relationship with Defendants Rees and Think Finance. They have concealed these arrangements through confidentiality clauses in the agreements.

142.    TCV has a 22.3 % equity ownership in Think Finance. TCV held that ownership through other TCV Entities, including TCV V.

143.    TCV has a representative on the Board of Directors of Think Finance. John C. Rosenberg, a General Partner and Head of Europe for Technology Crossover Ventures, has been a member of the Board of Directors of Think Finance since 2009. As a director, he was and continues to be fully aware of the Plain Green enterprise, including its formation and operation, and, through his leadership of Think Finance, perpetuated the scheme to collect unlawful debts and directed the strategy that Think Finance followed, including its domination and control of Plain Green.

144.    Sequoia has a 27.4% equity ownership in Think Finance. Sequoia holds that ownership interest through other Sequoia Entities.

145.    Sequoia had a representative on the Board of Directors of Think Finance. Michael L. Goguen, a General Partner at Sequoia Capital, served as a director for Think Finance. As a director, he was fully aware of the Plain Green enterprise, and through his leadership of Think Finance, he perpetuated the scheme to collect unlawful debts and directed the strategy that Think Finance followed, including its domination and control of Plain Green.

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 33 -

### Jessica Gingras's Payday Loans from Plain Green

146.     Jessica Gingras has taken out a number of payday loans, but has an incomplete record of those loans.

147.     Rees and Think Finance, through Plain Green, blocked Jessica Gingras's access to her Plain Green account. The following descriptions are based on her reconstruction of the loans from other information that is available to her and recently filed loan documents.

148.     Jessica Gingras took out a payday loan from FBDLoans.com on March 16, 2000 in the amount of $1,200. She made a total of 30 payments. The payments were $97.09, except that the last payment was $137.15. She paid a total of $2,952.76. FBDLoans.com transferred her loan to ThinkCash. ThinkCash transferred her loan again to Plain Green.

149.     Plain Green nominally gave Jessica Gingras a payday loan on July 6, 2011 for $1,050. She made a total of 13 payments in the amount of $110.31. She paid a total of $1,434.03. The loan documents indicate that Ms. Gingras was charged an annual percentage interest rate of 198.17%.

150.     Plain Green nominally gave Jessica Gingras a payday loan on July 24, 2012 for $500. She made two payments for $92.25 before she took out an additional loan for $2,400. She then made monthly payments in the amount of $131.90. She paid a total of $4,801. The loan documents indicate that Ms. Gingras was charged an annual percentage interest rate of 371.82%.

151.     An outstanding balance remains on Ms. Gingras's loan.

152.     Ms. Gingras has suffered injuries due to the illegal conduct of the Defendants described in this Complaint. A declaration that the loans are illegal and an injunction ordering Defendants to correct their statements concerning the legal nature of these loans will alleviate the infliction of irreparable harm.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

153.    Defendants, through Plain Green, required Jessica Gingras to agree to ACH withdrawals from her bank account before Plain Green would give her a loan.  Defendants, in concert with Rees and Think Finance, through their control over Plain Green, had automatic access to Ms. Gingras's bank account and continued to withdraw money from her account even after they had recouped the principal and a reasonable amount of interest.

154.    Jessica Gingras has never been to the Rocky Boy's Reservation.  She applied for the loans at her residence in Vermont.  Defendants, in concert with Rees and Think Finance, through their control over Plain Green, wired the money into Ms. Gingras's account in Vermont.

155.    Defendants, in concert with Rees and Think Finance, through their control over Plain Green, withdrew money from Ms. Gingras's account in Vermont by ACH withdrawal.

156.    Defendants, in concert with Rees and Think Finance, through their control over Plain Green, negotiated the purported and fraudulent contract with Jessica Gingras in Vermont.

157.    Defendants, in concert with Rees and Think Finance, through their control over Plain Green, directed their fraudulent representations to Jessica Gingras in Vermont.

158.    None of Plain Green's loan activity actually occurs on the Rocky Boy's Reservation.  Plain Green uses third parties to carry out all of the administrative tasks and substantive lending functions.  The third parties perform all of these tasks and functions off the Tribe's reservation.

159.    Defendants, in concert with Rees and Think Finance, through their control over Plain Green, have extended similar loans to hundreds of thousands of people.

### Angela Given's Payday Loans from Plain Green

160.    Angela Given has taken out a number of payday loans that purported to be through Plain Green.  Because Defendants, through Plain Green, have blocked access to Ms.


gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

Given's Plain Green account, the following descriptions are based on her reconstruction of the loans from other information that is available to her.

161.    Plain Green nominally gave Angela Given a payday loan on July 19, 2011 for $1,250. She made payments every two weeks for 26 weeks. She paid off the loan on July 19, 2012 with a final payment of $197.67. She paid a total of $2,968.75. The loan documents indicate that she was charged an annual percentage interest rate of 198.45%

162.    Plain Green nominally gave Angela Given a payday loan on July 24, 2012 for $2,000. The payments were $138.12 every two weeks. She made 14 payments and paid one lump sum in the amount of $1,801.73 on July 20, 2013. She paid a total of $3,735.41. The loan documents indicate that she was charged an annual percentage interest rate of 159.46%.

163.    Plain Green nominally gave Angela Given a payday loan on May 20, 2013 for $250. The payments were $56.43 every two weeks. She made three payments of $56.43. She paid off the loan with a lump sum payment of $203.50. She paid a total of $372.34. The loan documents indicate that she was charged an annual percentage interest rate of 376.13%.

164.    Plain Green nominally gave Angela Given a payday loan on July 17, 2013 for $3,000. The payments were $119.68. She made 25 payments. With the 15th payment, she included an extra $600 toward the principal. She still had five payments remaining when she called Plain Green. The loan documents indicate that she was charged an annual percentage interest rate of 59.83%

165.    Angela Given has taken out other loans nominally from Plain Green and from its predecessors in interest. A predecessor entity gave Angela Given's borrowing history and contact information to Plain Green for the purpose of evading the law.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

166. Defendants, through Plain Green, required Angela Given to agree to ACH withdrawals from her bank account before they would give her a loan. They had automatic access to Ms. Given's bank account and continued to withdraw money from her account even after they had recouped the principal and a reasonable amount of interest.

167. An outstanding balance remains on Ms. Given's last loan.

168. Ms. Given has suffered injuries due to the illegal conduct of the Defendants described in this Complaint. A declaration that the loans are illegal and an injunction ordering Defendants to correct their statements concerning the legal nature of these loans will alleviate the infliction of irreparable harm.

169. Angela Given has never been to the Rocky Boy's Reservation. She applied for the loans at her residence in Vermont. Defendants, in concert with Rees and Think Finance, through their control over Plain Green, wired the money into her account in Vermont.

170. Defendants, in concert with Rees and Think Finance, through their control over Plain Green, withdrew money from Ms. Given's account in Vermont by ACH withdrawal.

171. Defendants, in concert with Rees and Think Finance, through their control over Plain Green, negotiated the purported and fraudulent contract with Ms. Given in Vermont.

172. Defendants, in concert with Rees and Think Finance, through their control over Plain Green, directed their fraudulent representations to Ms. Given in Vermont.

The Arbitration Agreement

173. Another device that Defendants have employed to try to avoid legal liability is a purported arbitration agreement (the "Purported Arbitration Agreement"). To be clear, none of the Plaintiffs in this action can access any of the records relating to their loans from Plain Green, including any purported arbitration agreement with Defendants.

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

174.    The Purported Arbitration Agreement is unenforceable because it is unconscionable, its purpose has been frustrated, and it is fraudulent.

175.    The Purported Arbitration Agreement does not waive and attempts to preserve tribal immunity, and it claims to give all Defendants the ability to void any arbitration award by simply asserting tribal immunity after the fact.  Thus, the Purported Arbitration Agreement provides a remedy that is entirely illusory.

176.    For this reason alone, the Purported Arbitration Agreement is unconscionable.  There are, however, several additional indications that the agreement is unconscionable, including the following:

       a.    Because the monetary damages suffered by each Plaintiff and other members of the Class is small, the individual incentive to bring an action is extremely limited, particularly since payday loans target people who have few resources to bring a claim.

       b.    The doctrine of tribal immunity is a complicated legal doctrine with which few Americans, particularly the economically vulnerable people in this Class, are familiar.

       c.    The terms of the purported contract are not easily discovered on the Plain Green website.  The terms of the Purported Arbitration Agreement change from when a person applies for the loan to when the terms are presented after the application process.  The terms are presented, if they were presented to prospective borrowers at all, on a take it or leave it basis with no possibility of negotiation.



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

d.   The parties also have a great imbalance in negotiating leverage. Defendants have highly paid attorneys, including from some of the country's leading corporate law firms, Pepper Hamilton LLP and Hogan Lovells US LLP, representing them in connection with the purported loan agreements and in litigation matters. Plaintiffs and members of the Class individually lack the personal resources necessary to hire counsel at similar, sophisticated corporate law firms.

e.   When there is a hint of litigation, Plain Green cuts off access to the borrower's account, so that the borrower can no longer access the documents that purport to structure the relationship with Plain Green, if the borrower had access to those documents at the time of his or her loan application.

f.   The Purported Arbitration Agreement has a provision for shifting costs. That provision effectively prohibits borrowers from making low dollar claims.

g.   Defendants will only agree to have arbitration where the borrower resides if the borrower reaffirms that tribal immunity and tribal law applies.

177.   The Purported Arbitration Agreement is fraudulent and an important part of the scheme to defraud because it aims to deter victims from filing claims and to prevent federal court review of the illegal practices of the enterprise. The Purported Arbitration Agreement makes several material misstatements of fact.

178.   First, the Purported Arbitration Agreement states that the Lender was Plain Green, LLC. The Term Sheet reveals that this statement is false. Plain Green only received 4.5% of


gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

revenues from 99% of the loans.  Exhibit A at 2.  Plain Green also did not provide any of the

actual money that was loaned:  "Haynes will arrange to provide funding to the Tribe to enable it

to make each of the Loans."  *Id.* at 1.

179.    Second, the Purported Arbitration Agreement represents that the agreement "shall

be governed by the law of the Chippewa Cree Tribe."  However, the Term Sheet reveals that "law

of the Chippewa Cree Tribe" was bought and paid for by non-members of the Tribe and was not

"law" at all.  Under the Term Sheet, Chippewa Cree law became whatever Rees and Think

Finance dictated.  Specifically, the Term Sheet stated that:  "The Tribe will adopt a finance code

that is acceptable to all parties and provide for licensing of an arm of the tribe to engage in

consumer lending."  *Id.* at 1.  The Term Sheet further provided that the Tribe must "[r]evise the

Tribal Credit Transaction Code to provide for a broader array of lending products."  *Id.* at 3.

180.    Third, the Purported Arbitration Agreement states that "[n]either this Agreement

nor the Lender is subject to the laws of any state of the United States."  This statement is false

because the loans involve off reservation activity and are thus subject to state law.  Fourth, the

Arbitration Agreement bars the application of federal law through a number of mechanism.  The

Arbitration Agreement expressly disclaims the applicability of federal law: borrowers "agree that

no other state or federal law or regulation shall apply to this Agreement, its enforcement or

interpretation."  The agreement further states that "[s]uch voluntary use [of federal law] does not

represent acquiescence of the Chippewa Cree Tribe to any federal law unless found expressly

applicable to the operations of the Chippewa Cree Tribe offering such services."

181.    Defendants Victory Park, GPLS and Haynes, along with Rees and Think Finance,

required that Rosette, Whitford, and McInerney adopt laws that were favorable to Defendants

Victory Park, GPLS and Haynes, along with Rees and Think Finance, and the fraudulent scheme



gravel &
  shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

that they sought to perpetrate.  Rosette, Whitford, and McInerney did, in fact, adopt those tribal laws.

182.    The Chippewa Cree law that Defendants Victory Park, VP Management, GPLS and Haynes, along with Rees and Think Finance, purchased expressly further disclaimed the applicability of federal law.  Section 10-3-201 of the Chippewa Cree law eliminates any caps on interest rates.  Section 10-8-101 eliminates all federal and state law that is contrary to Chippewa Cree law:  "Except as otherwise provided in this Code or the other laws of the Tribe, Loan Agreement between any Creditor authorized by the Tribe to lend money and a Consumer shall be governed by this Code and the laws of the Tribe **notwithstanding any federal law** or Tribal law **to the contrary."**

183.    Rosette, Whitford, McInerney, and Abbasi restricted access to the laws of the Chippewa Cree Tribe by not making the law available to the general public through the Internet or other means.  Organizations – like law school libraries – will not provide a copy of the Chippewa Cree law by remote access because Rosette, Whitford, McInerney, and Abbasi have not granted them the right to do so.

184.    Plaintiffs and the Class believed that the representations made by Plain Green, including in the lending agreement, were true, including that their loans were legitimate "short term" loans, that Plain Green was the lender of the funds, and that Plain Green was a legitimate enterprise of the Tribe.  Plaintiffs also believed that their loans were legitimate and legal loans.

185.    Plaintiffs relied on these representations and continued to make payments on the illegal loans.

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 41 -

186.     The delegation provision of the Purported Arbitration Agreement is also fraudulent. That provision attempts to include within the scope of the arbitration agreement "any issue concerning the validity, enforceability, or scope of this loan or the Agreement to Arbitrate."

187.     First, by requiring the application of Chippewa Cree law, the Delegation Clause perpetuates the fraudulent creation and application of the law that was purchased. Second, the Delegation Clause also incorporates the fraudulent representation that Plain Green was a lender.

188.     The Delegation Clause is also illusory because Chippewa Cree law does not have a mechanism or standards for determining arbitrability. Sections 10-3-601 and 10-3-602 create an exclusive remedy that is impossible to use.

189.     Defendants planned the delegation provision to shield Defendants' widespread fraudulent practices from federal court review. Defendants furthered that plan by purporting to give the right to enforce an arbitration award to the tribal court. The Purported Arbitration Agreement states that: "The arbitrator will make written findings and the arbitrator's award may be filed with the tribal court. The arbitration award . . . may be set aside by the tribal court upon judicial review." By attempting to force any review of the arbitration into tribal court, Defendants Victory Park, GPLS and Haynes, along with Rees and Think Finance, sought to prevent any federal court from reviewing any arbitration decision. By adding multiple steps prior to federal court review, Defendants Victory Park and GPLS, along with Rees and Think Finance, made any claim against them economically impossible to pursue and tried to ensure that no one could prevail against them. Through the terms of their arrangement with Rosette, Whitford, and McInerney, Defendants Victory Park and GPLS, along with Rees and Think Finance, had the ability to control the Tribe's law and presumably could control actions taken by the tribal court. As a result, any review by the tribal court would be nothing more than a sham.

gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 42 -

190.    Moreover, the governance of the Tribe and Plain Green is in substantial flux and turmoil. Widespread corruption has gripped the Tribe that has affected its judiciary. Details surrounding the Tribe's governance and corruption issues are set forth in Paragraphs 132-144 of the Amended Complaint in *Gingras v. Rosette, et al.*, No. 1:15-cv-00101-gwc (D. Vt.)

## Class Allegations

191.    Plaintiffs bring this action on behalf of themselves and as a class action under Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), and (b)(3) on behalf of all members of the following Class:

All persons who took out payday loans issued in the name of Plain Green. Excluded from the Class are any persons who are residents of the Commonwealth of Pennsylvania and would be beneficiaries of claims brought by the Pennsylvania Attorney General in the action, *Commonwealth of Pa. v. Think Finance Inc, et al.*, No. 2:14-cv-07139-JCJ (E.D. Pa.).

192.    Plaintiffs do not know the exact number of class members because such information is in the exclusive control of Defendants. Based on information and belief and information obtained from publicly available sources, Plaintiffs believe that there are hundreds of thousands of members of the Class as a whole. The exact number of class members and their identities is known or may be ascertained by Defendants.

193.    The Class is so numerous that joinder of all members is impracticable.

194.    There are questions of law and fact common to the Class, including:

    a.    Whether Plain Green, LLC is an enterprise;

    b.    Whether Defendants Victory Park, VP Management, GPLS and Haynes, along with Rees and Think Finance, engaged and/or are engaging in a pattern of racketeering in violation of 18 U.S.C. § 1962(c);



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 43 -

c.    Whether the Victory Park Defendants, along with Rees, Think Finance,

TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia,

Technology Crossover, and Victory Park Capital engaged and/or are

engaging in the collection of an unlawful debt in violation of 18 U.S.C. §

1962;

d.    Whether Defendants are liable to Plaintiffs and other class members for

disgorgement or other equitable remedies and, if so, in what amount;

e.    Whether Defendants set the periodic repayment amounts to maximize

collection of interest on loans; and

f.    Whether Defendants are liable to Plaintiffs and the Class for reasonable

attorney's fees and expenses.

195.    Plaintiffs are members of the Class.  Their claims are typical of the claims of the

Class, and they will fairly and adequately protect the interests of the Class.

196.    Plaintiffs are represented by counsel who is competent and experienced in

handling *Ex Parte Young* cases, financial actions, and class action litigation.

197.    The prosecution of separate actions by individual members of the Class would

create a risk that adjudications with respect to individual members would, as a practical matter,

be dispositive of the interests of the other members who are not parties to the individual

adjudications, or it would substantially impair or impede the class members' ability to protect

their interests.

198.    The questions of law and fact common to the members of the Class predominate

over any questions affecting only individual members, including legal and factual issues relating

to liability and damages.

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 44 -

199.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist.  Prosecution of class member claims as a class action will eliminate the possibility of repetitious litigation.  Treatment of the controversy as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  This class action presents no difficulties in management that would preclude maintenance as a class action.

Efforts to Conceal the Role of the Victory Park Entities

200.     Until the October 2017 public filing of documents in connection with its Chapter 11 Bankruptcy, Think Finance has misrepresented and/or concealed the role of Defendant Victory Park, and entities owned or controlled by Victory Park, including GPLS, in the fraudulent scheme and the scheme to collect unlawful debts.  For example, in a September 30, 2010 press release, Think Finance stated that "it has secured a $90 million credit facility from Victory Park Capital Advisors.  The company will use this line of credit to fund expansion of its existing product line and to support the development and growth of new products."

201.     Think Finance's press release conveyed the idea that Victory Park was providing funding to the Think Finance entity.  It did not disclose and attempted to conceal that Victory Park was *directly participating in the actual online payday loans* made to borrowers of Plain Green through its Participation Agreement with Plain Green.

202.     Victory Park also attempted to conceal its role by the use of Cayman Islands front companies and trusts including but not limited to GPLS.



gravel &
  shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

203.     Plaintiffs have attempted to uncover the relationship between Think Finance and the Victory Park Defendants.  In connection with their separate action brought against Think Finance, Think Finance related entities, and certain officials of the Tribe, *Gingras v. Rosette*, No. 1:15-cv-101 (D. Vt.) (the "Think Action"), on February 19, 2016, Plaintiffs served their First Set of Interrogatories and Requests to Produce To Think Finance Defendants in the Think Action.  In those requests, Plaintiffs sought documents that would illuminate the Plain Green enterprise.  In addition to the general requests, Plaintiffs made specific requests related to the Victory Park Defendants.  For example, in Request No. 42, Plaintiffs sought "All Documents related to funding agreements with Victory Park Management, LLC."  In Request No. 45, Plaintiffs sought all documents related to Victory Park Capital.

204.     Defendants in the Think Action repeatedly resisted this discovery.  First, they refused to produce any documents in response to the discovery requests.  They claimed that discovery was not available because the District Court had not ruled on their Motions to Dismiss.

205.     After the District Court largely denied defendants' Motions to Dismiss in the Think Action, the defendants in the Think Action continued to refuse to produce documents. Defendants filed a Motion to Stay in the Think Action and the District Court granted the Motion to Stay.

206.     Plaintiffs first received any information or documents about the role of Defendants Victory Park, VP Management, GPLS, and entities owned or controlled by them in the Plain Green fraudulent enterprise in approximately September 2017, when certain materials were filed in an action brought by the Pennsylvania Attorney General against numerous entities involved in tribal lending activities including Think Finance and Victory Park.



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

207.    There is a protective order in the Pennsylvania Think Finance action that prevents Plaintiffs in this case from obtaining the discovery from the Pennsylvania case.

208.    Plaintiffs received additional documents and information confirming the role of the Victory Park Defendants in the Plain Green enterprise following the filing of Chapter 11 Bankruptcy petitions by Think Finance and certain of its wholly owned subsidiaries on October 23, 2017. Those materials include a sworn declaration of Think Finance's CFO and a verified adversary proceeding complaint against Victory Park filed in the Bankruptcy Court.

### Efforts To Shield The Proceeds Of Racketeering and Unlawful Debt Collection

209.    As regulators began to zero in on Plain Green and the non-tribal entities behind the enterprise, the Victory Park Defendants eventually refused to continue financing the Plain Green enterprise. Under scrutiny, Rees and Think Finance had difficulty finding financing for the illegal lending scheme and began a search for an alternative vehicle to shelter the ill-gotten proceeds from the racketeering and unlawful debt from further regulatory and legal scrutiny.

210.    On August 15, 2017, Marlin & Associates Holdings LLC and Marlin & Associates Securities LLC filed the Marlin Action against Think Finance for failing to pay fees associated with finding funding for Think Finance.

211.    The Marlin Action alleges that Victory Park provided notice that it would not provide Think Finance any funding for tribal payday loans beyond March 31, 2017. The Marlin Action also alleges that Think Finance lost a portion of the revenue that it had previously been receiving. Additionally, Think Finance faced increased expenses related to litigation. The Marlin Action alleges that the impending expiration of funding, in addition to lawsuits filed by the Pennsylvanian Attorney General's Office and others, made it difficult for Think Finance to secure funding to continue the rent-a-tribe payday lending scheme.

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

- 47 -

212.    Consequently, according to the Marlin Action, Think Finance established Defendant John Doe 2, an entity called Cortex, and eventually began to transfer Think Finance business and assets to Cortex.  Moreover, Think Finance executives had begun using Cortex email addresses and referring to the Cortex platform on Think Finance's website.

213.    On March 21, 2017, Defendant John Doe 3, an entity called the Circle of Nations Lending Authority – which the Marlin Action alleges is a Think Finance affiliate and designee – executed a Term Sheet and Letter of Intent with Defendant John Doe 4, an entity called Receivables Funding, LLC pursuant to which Receivables would provide a $175 million credit facility for the rent-a-tribe payday lending scheme with an option to increase the credit facility to $250 million.  This transaction closed on May 10, 2017.  The Marlin Action alleges that their help in soliciting and closing this transaction entitles them to a success fee of $6 million and that Think Finance had only paid $2 million.

### COUNT ONE
### Electronic Funds Transfer Act
### (Against All Defendants)

214.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

215.    Defendants are "persons" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

216.    Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

217.    Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended


gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

218.    The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R § 1005.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

219.    In numerous instances, in connection with offering payday loans to consumers, Defendants have conditioned the extension of credit on recurring preauthorized electronic fund transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 1005.10(e)(1) of Regulation E, 12 C.F.R § 1005.10(e)(1).

220.    Defendants' violations of the EFTA are ongoing.

221.    Defendants conditioned the loans on the acceptance of ACH as the transaction method. If the loan recipient requested a paper check, the loan documents required the recipients to make a payment on the principal before receiving the principal.

222.    An example from the loan documents shows how the economic disincentives worked. One loan was originated on July 16, 2013. Under the purported loan documents, the lender did not send the funds until after the "Right of Recission" expired five business days later. Thus, the lender would have sent the check on July 24. The lending documents state that the borrower should allow 7 to 10 business days for delivery of the check. Thus, the check might arrive on August 5, 2013.

223.    The borrower, on the other hand, was required to make the first payment on August 2, 2013. Allowing the same ten days for delivery, the borrower would have to send the check on July 23, 2013, about two weeks before the borrower received the principal.



gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

224.     The purported lending documents also create significant penalties for a late payment.  If the borrower misses a single payment under the documents, the borrower owes the entire balance.  In addition, Defendants can take that entire balance immediately from a borrower's bank account by ACH transaction.  Thus, under the lending documents, the borrower must pay Defendants a payment before the borrower receives the loan principal or Defendants can take the entire amount of the loan from the borrower's bank account even before the borrower receives the funds that are purportedly being lent.

225.     The choice is a false choice and in any event, the agreement conditions the borrower to accept transfers by ACH transfer, which is prohibited by the EFTA.

226.     As a result of Defendants' violations of the EFTA, Plaintiffs were damaged.

COUNT TWO
Vermont Consumer Fraud Act
(Against All Defendants)

227.     Plaintiffs reassert and incorporate by reference each of the above paragraphs.

228.     Under section 2481w of the Vermont Consumer Fraud Act ("CFA"), "it is an unfair and deceptive act and practice in commerce" for any lender to make a loan to a consumer unless that lender is in compliance with all provisions of 8 V.S.A. Chapter 73 (Licensed Lenders laws).  In relevant part, 8 V.S.A. § 2201 requires that all lenders obtain a license from the Vermont Department of Financial Regulation before loaning any money in Vermont.  Any unlicensed lender providing payday loans to Vermont consumers is in violation of the CFA.

229.     Defendants are not licensed lenders in Vermont.

230.     It is a violation of the CFA to charge interest in excess of the legal rates set under 9 V.S.A. § 41a (generally 18-21% for the type of loan at issue here).  *See* Consumer Protection



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

Rule 104.05 (making any collection or attempt to collect interest in excess of the legally chargeable rate an unfair and deceptive act under section 2453(a) of the CPA).

231.    Defendants' violations of the Vermont Consumer Fraud Act are ongoing.

232.    Defendants charge interest in excess of the statutory maximum.

233.    Defendants have falsely reported the status of consumers' illegal debts to credit rating agencies as if the debts were legitimate debts.

234.    Defendants' representation of the loans as short-term emergency loans is deceptive and false.

235.    Defendants' representation of the loans as legitimate loans to credit rating agencies is deceptive and false.

236.    Defendants' lending practices also violate the CFA's bar on deceptive and unfair business practices, including without limitation the mail and wire fraud described above, the creation of an enterprise to avoid the application of state law, the use of a front company to shield the true managers of the enterprise from liability, the use of economic incentives to force people to use ACH transactions to accept cash, the automatic deductions of funds from a personal account to make illegal and excessive interest deduction, and the use of sophisticated data mining to find targets for the illegal schemes.

COUNT THREE
RICO § 1962(c)
(Against The Victory Park Defendants)

237.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

238.    This Count is against the Victory Park Defendants for damages.

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 51 -

239.    Plain Green is an enterprise engaged in and whose activities affect interstate commerce.  At all relevant times, the Victory Park Defendants have been associated with the Plain Green enterprise.

240.    Plain Green is distinct from the Victory Park Defendants.  Despite their management and control of the enterprise, the Victory Park Defendants have attempted to create the appearance of separate corporate forms and attempted to distance themselves from the enterprise through the execution of various legal documents described above.

241.    The Plain Green enterprise is engaged in, and its activities affect, interstate commerce.  The Plain Green enterprise has leadership based in Addison, Texas and Chicago, Illinois, and operates throughout the United States, including the District of Vermont.

242.    The Plain Green enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

243.    The Plain Green enterprise is led, controlled, and managed by the Victory Park Defendants.

244.    The purpose of the enterprise was and continues to be the enrichment of the Victory Park Defendants and other members and associates of the Plain Green enterprise, through a pattern of racketeering activity and the collection of unlawful debts.

245.    The Victory Park Defendants' management, and participation in the Plain Green enterprise began at some point as early as March 2011, and continues to date to the detriment of individual consumers throughout the United States.

246.    Pursuant to and in furtherance of their fraudulent scheme, the Victory Park Defendants committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C § 1341.  These acts of wire fraud include the wires made into and



gravel &
shea  ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

out of the accounts of Plaintiffs in Vermont described in paragraphs 116-120, 126-127, 130-132, 153-155, 166, and 169-170.  The wire fraud occurred thousands of additional times on a nationwide basis to other borrowers around the country.  The acts of wire fraud include the use of the Internet to transmit the lending agreement and the arbitration agreements as described in paragraphs 121-123, 128, 156-157, and 171-172.

247.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

248.    The Victory Park Defendants have directly and indirectly conducted and participated in the conduct of the Plain Green enterprise's affairs through the pattern of racketeering and activity describe above, in violation of 18 U.S.C. § 1962(c).

249.    As a direct and proximate result, the Victory Park Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their property in that they paid extortionate and illegal interest rates.  Plaintiffs have also been injured in that their credit ratings have been damaged and their ability to obtain credit has been damaged.

## COUNT FOUR
### RICO (Illegal Debt)
#### (Against the Victory Park Defendants)

250.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

251.    This Count is against the Victory Park Defendants.

252.    The Victory Park Defendants have managed, controlled, and participated in the affairs of the Plain Green enterprise through the collection of unlawful debt as that term is defined in 18 U.S.C. § 1961(6).

253.    The means and methods by which the Victory Park Defendants and other members and associates conducted and participated in the conduct of the affairs of the Plain

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 53 -

Green enterprise was and continues to be the operation, direction, and control of payday loan companies in the business of lending money at usurious rates under the laws of numerous states, including Vermont, where the usurious rates were at least twice the enforceable rate.

254.    In operating and conducting the affairs of the Plain Green enterprise, the Victory Park Defendants, used proceeds from the collection of unlawful debt to further the operations and objectives of the Plain Green enterprise.

255.    The predicate acts of unlawful debt collection are described in paragraphs 134-145, 149-150, and 161-164.  The debts incurred by Plaintiffs and all other members of the Class are unlawful and unenforceable.

256.    Plain Green is engaged in the business of lending money at usurious rates of more than twice the legal limit in several states, including without limitation the State of Vermont.

257.    The usurious rates charged to Plaintiffs and the Class by the Victory Park Defendants were more than twice the enforceable limit.

258.    As a direct and proximate cause of the unlawful collection of illegal debt, Plaintiffs have been injured.  Plaintiffs have been injured in their property in that they paid extortionate and illegal interest rates.  Plaintiffs have also been injured in that their credit ratings have been damaged and their ability to obtain credit has been damaged.

## COUNT FIVE
### RICO § 1962(d)
### (Against All Defendants)

259.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

260.    Beginning in January 2011, the Victory Park Defendants, Defendant Haynes Investments, and Defendants John Doe 1-10, along with Rees, Think Finance, TC Loan, TC Decision Sciences, and Tailwind Marketing, Sequoia, TCV, and TCV V, being persons associated

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

with the Plain Green enterprise, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate 18 U.S.C. § 1962(c) – that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Plain Green enterprise through a pattern of racketeering activity and the collection of unlawful debt.

261.    The Victory Park Defendants, Defendant Haynes Investments, and Defendants John Doe 1-10, along with Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, TCV, and TCV V knowingly entered into a series of agreements designed to further the affairs of the Plain Green enterprise and the business of illegal lending that violates RICO § 1962(c).

262.    Each of these agreements contemplated that a conspirator would commit at least one collection of an unlawful debt in the conduct of the affairs of the enterprise.

263.    Each of these agreements contemplated that a conspirator would commit at least one act of racketeering in the conduct of the affairs of the enterprise.

264.    As a result of Defendants' participation in the enterprise and the violations of RICO, Plaintiffs and the Class have been injured.  Plaintiffs and the Class have been injured in their property in that they paid amounts in extortionate and illegal interest rates.

COUNT SIX
Unjust Enrichment
(Against All Defendants)

265.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

266.    Defendants have been unjustly enriched by their continued possession of funds illegally taken from people in financially challenged positions.

267.    In equity and good conscience, those funds should be returned to the people who fell victim to Defendants' illegal scheme.

gravel &
shea   ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 55 -

Claims for Relief

WHEREFORE, Plaintiffs respectfully seek the following relief:

A.      A declaration that Defendants have violated the Vermont Consumer Fraud Act;

B.      A declaration that Defendants have violated the Electronic Funds Transfer Act;

C.      A permanent injunction barring Defendants from providing, collecting on, and
        servicing illegal loans;

D.      A permanent injunction barring Defendants from conditioning loans on agreeing
        to ACH withdrawals;

E.      Preliminary and temporary injunctive relief as the Court deems appropriate;

F.      Equitable surcharge seeking return of all interest charged and any financial
        charges associated with the loan;

G.      A constructive trust over funds obtained illegally;

H.      Actual damages suffered by Plaintiffs and the Class;

I.      Tremble damages for Plaintiffs and the Class under 18 U.S.C. § 1964;

J.      An order awarding attorneys' fees and costs; and

K.      Any other relief the Court deems just and proper.


gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont 05402-0369

## JURY DEMAND

**Plaintiffs demand trial by jury of all issues so triable.**

Dated:          Burlington, Vermont
                November 21, 2017

Matthew B. Byrne, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
mbyrne@gravelshea.com

**BERMAN TABACCO**
Kathleen M. Donovan-Maher (pro hac forthcoming)
Steven J. Buttacavoli (pro hac forthcoming)
Steven L. Groopman (pro hac forthcoming)
One Liberty Square
Boston, MA  02109
617-542-8300
kdonovanmaher@bermantabacco.com
sbuttacavoli@bermantabacco.com
sgroopman@bermantabacco.com

For Plaintiffs

gravel &
shea | ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
76 St. Paul Street
P.O. Box 369
Burlington, Vermont  05402-0369

- 57 -